UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DEBORAH FULLER, *as Administratrix of the Estate of Matthew Fuller*,  Plaintiff,

v.  Civil Action No. 3:17-cv-661-DJH

LOUISVILLE METRO GOVERNMENT, et al.,  Defendants.

\* \* \* \* \*

# MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Fuller brings this action as Administratrix of the Estate of Matthew Fuller against Defendants Louisville/Jefferson County Metro Government, Louisville Metro Department of Corrections Director Mark Bolton, Correct Care Solutions, LLC, and several doctors and nurses employed by Correct Care. (Docket No. 1) Fuller alleges that while in the custody of Metro Corrections, her son Matthew Fuller suffered from the defendants' deliberate indifference to his serious medical needs. (*Id.*) Louisville Metro and Metro Corrections Director Bolton move to dismiss the claims against them. (D.N. 10) Because Fuller fails to provide sufficient facts to state a plausible claim for relief against Louisville Metro or Director Bolton, the Court will grant Defendants' motion.

**I.  Background**

The following facts are set forth in the complaint and taken as true for the present motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

This action arises out of serious medical complications that Matthew Fuller developed during his incarceration in Louisville Metro Department of Corrections. (D.N. 1) Correct Care

1

is a private entity contracted to provide medical services to inmates at LMDC. (*Id.*, PageID # 4) The doctors and nurses named as defendants in this matter are Correct Care employees. (*Id.*)

On June 9, 2016, Matthew Fuller was arrested and admitted to LMDC. (*Id.*, PageID # 5) In light of Fuller's acknowledgement that he used a 1/2 gram of heroin on a daily basis, the Correct Care employees at issue charted Fuller's progress on an Opiate Withdrawal Score Sheet. (*Id.*) Despite running a fever of 100.9 degrees, the employees removed Fuller from monitoring on June 11. (*Id.*) Three days later, Fuller submitted a Healthcare Request Form, in which he complained of continuing fever. (*Id.*) A nurse gave Fuller Tylenol, documented his fever as "routine," and instructed him to "contact medical if symptoms reoccur." (*Id.*, PageID # 6) On June 17, Fuller again complained of continuing fever. (*Id.*) A nurse documented the complaint as "routine," and instructed him to "contact medical if symptoms reoccur." (*Id.*)

Also on June 17, Fuller submitted an additional Healthcare Request Form, in which he stated: "I have not had a bowel movement in over one week – serious pain!!" (*Id.*) A doctor prescribed Fuller a stool softener but took no further corrective action. (*Id.*, PageID # 7) Thereafter, Fuller's condition deteriorated significantly. A Progress Note prepared on June 21, 2016, indicated that Fuller's vitals were abnormal. (*Id.*) Defendant Dr. Rozefort diagnosed Fuller with dehydration and ordered that he be administrated fluids intravenously. (*Id.*) On June 22, Fuller's pulse rate increased to 140 beats per minute, his temperature increased to 100.2 degrees, and his oxygen saturation decreased to 91%. (*Id.*, PageID # 8) That same day, Defendant Dr. Kutnicki assessed Fuller for potential sepsis and directed that he be immediately transported to the E.R. at the University of Louisville Hospital for further testing. (*Id.*)

Upon his arrival to U of L Hospital, Fuller was "intubated for hypoxic respiratory failure, and diagnosed with septic shock and acute infective endocarditis, a bacterial infection of the

heart that can be caused by sepsis." (*Id*.) Fuller was then transferred to Jewish Hospital, where he remained until his death on July 5, 2016. (*Id*)

On October 31, 2017, Deborah Fuller brought this action against Defendants Louisville Metro, Director Bolton, Correct Care, and several doctors and nurses employed by Correct Care, alleging constitutional and state-law violations. (D.N. 1) She contends that "[t]he signs and symptoms of sepsis include fever, an elevated heart rate, weakness, diarrhea and pain, all of which Mr. Fuller . . . exhibited long before he saw Dr. Kutnicki." (*Id*., PageID # 8) She claims that the medical professionals failed to timely diagnose Matthew Fuller as a result of their deliberate indifference to his serious medical needs. (*Id*., PageID # 9) Louisville Metro and Director Bolton now move to dismiss Fuller's claims against them. (D.N. 10)

## II. Standard

In order to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not shown that he is entitled to relief. *Id*. at 679. The complaint need not contain "detailed factual allegations," but it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). "Although for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [the Court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (citing *Twombly*, 550 U.S. at 555). Furthermore, "[w]hile a complaint will survive a motion to dismiss if it contains either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal

3

theory . . . legal conclusions masquerading as factual allegations will not suffice." *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (internal quotations omitted).

### III. Discussion

**A. Factual Matters Outside the Pleadings**

As an initial matter, Fuller argues that Defendants improperly rely on factual matters outside the pleadings to support their motion to dismiss. (D.N. 11, PageID # 106) *See also Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) ("Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings."). Fuller seems to take issue with Defendants' contention that they neither "supervise [n]or establish policies for medical professionals who are employed by Correct Care Solutions." (D.N. 10-1, PageID # 92) Even if that contention constitutes an assertion of fact outside the pleadings, Fuller's concern is ultimately irrelevant. In her complaint, Fuller alleges that her son's death resulted from "customs and practices of Defendants that were *contrary to* or expressly violated written policies of Correct Care and/or the Jail." (D.N. 1, PageID # 9 (emphasis added)) Put differently, Fuller's municipal and supervisory claims under § 1983 do not depend on whether Louisville Metro and Bolton established policies for Correct Care. *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (finding that a municipality may be held liable under § 1983 for an unconstitutional custom that is contrary to its established policy). And as explained below, even assuming that Defendants established policies for Correct Care employees, Fuller still fails to allege the requisite facts to state a plausible claim for relief against Louisville Metro and Director Bolton.

**B. Deliberate Indifference to Serious Medical Needs**

In Count I of the complaint, Fuller alleges that "*Defendants'* conduct . . . was indicative of their total, deliberate and reckless disregard of and indifference to Mr. Fuller's life." (D.N. 1, PageID # 9 (emphasis added))  Fuller does not clarify which individual "defendants" she refers to and thus it is unclear from the face of her complaint whether she asserts that claim against Bolton.[1]  For purposes of the present motions, the Court will therefore construe the complaint as alleging a deliberate-indifference claim against Bolton in his individual capacity.

"Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).  "Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the decedent's] health and safety." *Watkins v. City of Battle Creek*, 273 F.3d 682, 686 (6th Cir. 2001).  Fuller is required to sufficiently allege both an objective and subjective component.  "The objective component requires the existence of a 'sufficiently serious' medical need." *Blackmore*, 390 F.3d at 895. "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable mind in denying medical care.'" *Id*. (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).  "Knowledge of the asserted serious needs, or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)).

---

[1] The claim would not apply to Louisville Metro.  As explained below, to hold Louisville Metro liable, Fuller must demonstrate that Matthew Fuller's death resulted from a Louisville Metro custom or policy.  *See Bright v. Gallia Cty., Oh.*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Monell*, 436 U.S. at 690–91).

Fuller's complaint contains no facts upon which the Court could plausibly conclude that Bolton had knowledge of Matthew Fuller's medical needs. (*See* D.N. 1, PageID # 5–9)  Indeed, the "Facts" section of Fuller's complaint fails to even mention Director Bolton. (*Id.*)  This court has consistently dismissed complaints which fail to present sufficient facts to indicate that the correctional director had knowledge of the plaintiff's serious medical needs. *See, e.g.*, *Smith v. Bolton*, No: 3:17-CV-00468-JHM, 2017 WL 5180960, at *2 (W.D. Ky. Nov. 8, 2017) ("But as for the Defendant[] . . . Bolton . . . there are no assertions that [he] had any direct knowledge or involvement in Plaintiff's arrest, detention, alleged excessive force or alleged failure to treat Plaintiff's medical needs."); *Blaine v. Louisville Metro Gov't*, No. 3:13–CV–00427–CRS, 2014 WL 321142, at *2 (W.D. Ky. Jan. 29, 2014) ("As a practical matter, this disposes of Plaintiff's deliberate indifference claim because . . . she has not alleged that Defendants Conrad and Bolton had direct knowledge of either [the decedent's] confinement or his medical condition."); *see also Green v. Haverstick*, No. 16–2523, 2017 WL 5171244, at *1 (6th Cir. 2017) ("Because [the plaintiff] failed to allege facts sufficient to show that John Doe # 1 was aware of a specific and serious risk to [the plaintiff] at the time he was injured, the district court did not err in dismissing this claim.").

Fuller's sole argument in rebuttal is that "[s]he has not yet been afforded any discovery to determine whether, in fact, Bolton had . . . direct contacts with Mr. Fuller." (D.N. 11, PageID # 108)  Fuller misstates her burden, however.  At this stage of the proceedings, Fuller is required to allege sufficient "factual content that allows the [C]ourt to draw the reasonable inference" that Bolton had direct knowledge of Matthew Fuller's serious medical needs. *Iqbal*, 556 U.S. at 678; *see also Miller*, 408 F.3d at 813; *Blaine*, 2014 WL 321142 at *2 ("Plaintiff argues that Defendants' Motion to Dismiss is premature because they 'have been afforded no opportunity to

discover the policies, customs, and practices that may have caused [the decedent's] death' . . . . [However,] motions to dismiss are based on allegations contained in the relevant pleadings as opposed to facts developed in discovery." (internal alterations omitted)). Fuller has failed to satisfy her burden. Thus, to the extent that Fuller alleges a constitutional deliberate-indifference claim against Bolton, the Court will dismiss her claim.

## C. *Monell* Liability

Fuller also asserts a municipal-liability claim against Louisville Metro. (*See* D.N. 1, PageID # 9) "A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). Accordingly, to proceed with her *Monell* claim, Fuller must present sufficient "factual content that allows the [C]ourt to draw the reasonable inference" that Matthew Fuller's death occurred as a result of a Louisville Metro custom or policy. *Iqbal*, 556 U.S. at 678.

In her complaint, Fuller states that

> [she] believes and, after reasonable discovery, will show that Mr. Fuller's treatment by Defendants was the result of customs and practices of Defendants that were contrary to or expressly violated written policies of Correct Care and/or the Jail, and that such customs and practices were the "moving force" behind Mr. Fuller's death.

(D.N. 1, PageID # 9) Fuller's complaint contains no factual content upon which the Court could conclude that Matthew Fuller's death was the result of a policy or custom implemented by Louisville Metro, however. In the "Facts" section of her complaint, the only reference to a municipal policy is that "Defendant Louisville Metro Government and LMDC have a policy with terms that clearly embraced Mr. Fuller's obviously serious medical condition, but which were ignored by Jail employees whenever a medical professional . . . was on site." (*Id.*) That

7

statement is insufficient to state a claim for municipal liability. First, it does not sufficiently allege that Matthew Fuller's death resulted from a Louisville Metro policy; indeed, Fuller alleges that her son's death resulted from employees ignoring the policy. As explained above, a municipality may be held liable under § 1983 only where the alleged federal violation *resulted from* a municipal policy or custom. *See Monell*, 436 U.S. at 694. Second, Fuller does not adequately allege that the employees' disregard for the policy happened so frequently as to constitute a municipal custom. *See Jordan v. City of Detroit*, 557 F. App'x 450, 457 (6th Cir. 2014) ("A single instance, without more, does not amount to a custom, policy or practice." (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985))).

This court has consistently dismissed complaints that fail to present sufficient facts to indicate that the injury at issue occurred as a result of a policy or custom implemented by the municipality. *Neal v. Bolton*, No. 3:17CV-P496-TBR, 2018 WL 314829, at *3 (W.D. Ky. Jan. 5, 2018) ("None of the allegations in the complaint demonstrate that any alleged wrongdoing or injury occurred as a result of a policy or custom implemented or endorsed by the Louisville Metro Government."); *Phillips v. PTS of Am., LLC*, No. 3:17-cv-00603-JHM, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017) ("There are statements that suggest these policies or customs were related to the training and supervision of staff at LMDC, but the complaint contains no factual content upon which the Court could find that the plaintiffs are plausibly entitled to relief, such as what these policies or customs regarding training and supervision were, why they were inadequate, and how they contributed to the violation of [the decedent's] constitutional rights."); *Blaine*, 2014 WL 321142 at *2 ("In her Complaint, Plaintiff clearly states that Defendant Louisville Metro Government was responsible for the policies, customs, and practices which ultimately caused [the decedent's] death, but fails to specifically identify the

relevant policy, custom, or practice."); *see generally Horn v. City of Covington*, No. 14–73–DLB–CJS, 2015 WL 4042154, at *4 (E.D. Ky. July 1, 2015) (finding that to proceed with a *Monell* claim, a plaintiff "must identify and describe the official policy or custom that resulted in a constitutional violation"). Consistent with this caselaw, the Court finds that Fuller's conclusory allegation that Matthew Fuller's death resulted from a Louisville Metro custom or policy does not suffice to state a plausible claim for relief.

Fuller additionally alleges that her son's death "resulted from the failure of . . . Louisville Metro . . . to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures." (D.N. 1, PageID # 4–5) Again, Fuller fails to allege any facts to support this claim. Specifically, Fuller fails to identify the policy or custom that allegedly resulted in deficient training of the employees at issue, *Phillips*, 2017 WL 4582801 at *2, to provide facts regarding Louisville Metro's knowledge of the employees' unfitness at the time of hiring, *Jackson v. Jernigan*, No. 3:16-cv-00750-JHM, 2017 WL 1962713, at *4 (W.D. Ky. May 11, 2017) ("[T]he complaint contains no allegations that there were red flags that would have indicated that either [officer] would cause the particular constitutional violations alleged by [the plaintiff]."), and to state a factual background pertaining to Louisville Metro's alleged failure to promulgate policies, *Bradford v. Bracken Cty.*, No. 09-115-DLB, 2010 WL 11520681, at *4 (E.D. Ky. Feb. 1, 2010) ("Plaintiffs' Complaint in conclusory fashion asserts that [the defendants] 'failed' to establish and enforce policies . . . without stating any facts to support the allegations asserted.").

Because Fuller fails to present sufficient facts to indicate that Matthew Fuller's death occurred as a result of a policy or custom implemented by Louisville Metro, the Court will

dismiss Fuller's municipal-liability claims. *Neal*, 2018 WL 314829 at *3; *Phillips*, 2017 WL 4582801 at *2; *Blaine*, 2014 WL 321142 at *2.

**D. Supervisory Liability**

Fuller also asserts § 1983 claims against Bolton in his supervisory capacity. She alleges that Matthew Fuller's death "resulted from the failure of . . . Mark E. Bolton . . . to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons . . . and/or to promulgate appropriate operating policies and procedures either formally or by custom." (D.N. 1, PageID # 4–5) The Sixth Circuit has "long held that supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor," and that "a mere failure to act will not suffice to establish supervisory liability." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Active unconstitutional behavior means that the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009)). At a minimum, a plaintiff must allege that the supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). However, knowledge of the unconstitutional conduct and a subsequent failure to act does not constitute acquiescence of the conduct. *Id*. Moreover, "[a]s part of this inquiry, this [C]ourt also considers whether there is a causal connection between the defendant's wrongful conduct and the violation alleged." *Peatross*, 818 F.3d at 242.

In her complaint, Fuller presents no factual content to indicate that Bolton encouraged or directly participated in the officers' conduct or that at a minimum he implicitly authorized,

approved, or acquiesced in the conduct. (*See* D.N. 1) As explained above, the Complaint contains no facts whatsoever to link Bolton to the incidents at issue. (*See id.*) This court has consistently dismissed claims against supervisory officials where the complaint lacks factual detail connecting the supervisory official to the alleged underlying unconstitutional actions. *See, e.g.*, *Neal*, 2018 WL 314829 at *3 ("Plaintiff fails to allege that Defendant Bolton was actively involved in any of the alleged wrongdoing."); *Martinez v. Bolton*, No. 3:17-cv-P265-DJH, 2017 WL 2989185, at *3 (W.D. Ky. July 13, 2017) ("Thus, because Plaintiff has failed to allege Defendant Bolton engaged in any active unconstitutional conduct, the individual-capacity claim against him will also be dismissed for failure to state a claim upon which relief may be granted."); *Prather v. Corrections Care Sollutions* (sic), No. 3:15CV-P770-JHM, 2016 WL 866356, at *4 (W.D. Ky. Mar. 3, 2016) ("Plaintiff fails to allege that Defendant Director Bolton was actively involved in any of the alleged wrongdoing.").

More specifically, mere formulaic recitations of "failure to train" or "failure to employ qualified persons" will not suffice to establish supervisory liability. *See Harper v. Conrad*, No. 3:14–CV–P523–H, 2014 WL 5100625, at *5 (W.D. Ky. Oct. 10, 2014) ("Plaintiff's complaint is void of any allegation that Defendant Conrad directly participated or implicitly authorized, approved, or acquiesced in the alleged wrongful behavior. Accordingly, the failure-to-train claim against Defendant Conrad in his individual capacity will be dismissed from this action for failure to state a claim upon which relief may be granted."); *Compton v. City of Harrodsburg, Ky.*, No. 5:12–cv–302–JMH, 2013 WL 663589, at *7 (E.D. Ky. Feb. 22, 2013) ("It is clear, however, that Plaintiff's Complaint and Amended Complaint are completely devoid of allegations that [the officer] engaged in any sexual misconduct prior to his employment, and was thus unfit for duty as a police officer. Nor does the Plaintiff allege that [the supervisor] or the

City knew or should have known of any such misconduct."). And to proceed with her failure-to-promulgate claim, Fuller must allege facts to indicate subjective knowledge on the part of Bolton that prison policy for responding to medical requests was inadequate and was putting inmates at risk. *See Tate v. Coffee Cty., Tenn.*, 48 F. App'x 176, 180 (6th Cir. 2002). Instead, Fuller states in conclusory fashion that Bolton "fail[ed] . . . to train . . . and/or promulgate appropriate operating policies and procedures." (D.N. 1, PageID # 4–5) Without factual background, that statement is insufficient to survive a motion to dismiss. *See Bradford*, 2010 WL 11520681 at *4 ("Plaintiffs' Complaint in conclusory fashion asserts that [the supervisors] 'failed' to establish and enforce policies . . . without stating any facts to support the allegations asserted. Neither [supervisor is] mentioned as participants in Plaintiffs' general factual allegations, nor does the Complaint assert facts demonstrating the plausibility of the above allegations.").

Because Fuller fails to provide facts to plausibly indicate that Bolton's actions constitute "active unconstitutional behavior," the Court will dismiss her supervisory-liability claims against Director Bolton. *See Peatross*, 818 F.3d at 241.

**E. State-Law Claims**

Finally, Fuller alleges two state-law claims against Bolton: (i) negligence/gross negligence and (ii) wrongful death. (D.N. 1, PageID # 10) As an initial matter, Fuller provides no factual assertion that Bolton's own negligence led to Matthew Fuller's death. (*Id.*) Rather, it appears that Fuller seeks to hold Bolton liable for the alleged negligent actions of his subordinates. Under Kentucky law, "a claim against a public official must contain some allegation that the official was directly involved in the negligent acts of subordinates, otherwise, there is no vicarious liability for the public official." *Juillerat v. United States*, No. 3:16-cv-00276-TBR, 2016 WL 6156179, at *6 (W.D. Ky. Oct. 21, 2016) (internal quotations omitted)

12

(citing *Moores v. Fayette Cty.*, 418 S.W.2d 412, 414 (Ky. 1967)); *see also Yanero v. Davis*, 65 S.W.3d 510, 528 (Ky. 2001) ("Public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill."). Thus, "for [Bolton] to be liable for any actions of his subordinates, he must have either employed persons he knew to be incompetent for their positions or he must have been somehow directly involved in the alleged negligent acts of his subordinates." *Juillerat*, 2016 WL 6156179 at *6. As explained above, Fuller fails to plead any facts to raise the plausible inference that Bolton had reason to question the medical professionals' competence. (*See* D.N. 1) Nor has Fuller alleged facts to indicate that Bolton was directly involved in the incident at issue. (*See id.*) The Court will therefore dismiss Fuller's state-law claims against Bolton. *See Smith*, 2017 WL 5180960 at *3 ("[T]he Complaint . . . does not allege any facts to support a claim that Defendants ratified or participated in the acts of Unknown Officers. Thus, Plaintiff's allegations of negligence against [the] Defendants . . . fail to state a claim and are dismissed.").

## IV. Conclusion

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendants Louisville Metro and Director Bolton's motion to dismiss (D.N. 10) is **GRANTED**.

(2) The Clerk of Court is **DIRECTED** to terminate Louisville Metro and Metro Corrections Director Mark Bolton as defendants in the record of this matter.

(3) Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to Magistrate Judge Colin H. Lindsay for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all nondispositive matters, including discovery issues. Judge Lindsay is further authorized to conduct one or more settlement conferences in this matter.

June 19, 2018

**David J. Hale, Judge**
**United States District Court**